1

2

3

4

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6

7   RICHARD BANGS,

8        Plaintiff,                        No.  2:13-CV-03136-RHW

9        v.

10   CAROLYN W. COLVIN,                    **ORDER GRANTING**
     Acting Commissioner of Social        **DEFENDANT'S MOTION FOR**
11   Security,                            **SUMMARY JUDGMENT**

12        Defendant.

13        Before the Court are the parties' cross-motions for summary judgment, ECF

14   Nos. 19 & 23.  D. James Tree represents Richard Bangs ("Plaintiff" or

15   "Claimant"), and Special Assistant United States Attorney Thomas M. Elsberry

16   represents Defendant Commissioner of Social Security (the "Commissioner").

17   Plaintiff brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g),

18   of the Commissioner's final decision, which denied his application for Disability

19   Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under

20   Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.

After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court grants Defendant's Motion for Summary Judgment, and directs entry of Judgment in favor of Defendant.

## I.    Jurisdiction

Plaintiff filed concurrent applications for DIB and SSI on December 6, 2007. AR 130-140.  The alleged onset date was March 1, 2005. *Id.* Plaintiff's application was initially denied on January 29, 2008, AR 53-61, and on reconsideration on April 2, 2008. AR 63-73.  Plaintiff filed a written request for hearing on May 15, 2008. AR 74.

### 1. The First ALJ Ruling

The first hearing with an Administrative Law Judge ("ALJ") occurred on October 8, 2009. AR 528-550. ALJ Kim Parrish held a video hearing in Oklahoma City, Oklahoma.  *Id.* On January 15, 2010, the ALJ issued a decision finding Plaintiff ineligible for SSI and DIB payments. AR 15-22.  The Appeals Council denied Plaintiff's request for review on February 16, 2011, AR 593-595, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff filed an appeal in the U.S. District Court for the Eastern District of Washington on April 5, 2011. CV-11-3039-JPH, ECF No. 1. On August 12, 2012, through stipulation of the parties, the District Court issued an Order Adopting the

Report and Recommendation of Magistrate Judge Hutton. CV-11-3039-JPH, ECF No. 25; AR 598-600.

## 2. The Second ALJ Ruling

The Appeals Council remanded the case to an ALJ. AR 622-626. The second ALJ was instructed by the Appeals Council to further evaluate the medical evidence and opinions, including that of treating psychiatrist, Dr. Bonnie Hartman, MD, and also to further evaluate the credibility of the Claimant. AR 625.

ALJ M.J. Adams presided over a second hearing on October 10, 2013. AR 553-577. The ALJ found the Claimant ineligible for SSI and DIB payments on October 23, 2013. AR 512-528. Because the Claimant did not file written exceptions and the Appeals Council did not review the decision on its own, the ALJ's decision became the final decision of the Commissioner on the 61st day following the notice of denial. AR 513.

Plaintiff timely filed the present action challenging the denial of benefits, on December 31, 2013. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

1    can be expected to last for a continuous period of not less than twelve months." 42

2    U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

3    under a disability only if the claimant's impairments are of such severity that the

4    claimant is not only unable to do his previous work, but cannot, considering

5    claimant's age, education, and work experience, engage in any other substantial

6    gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

7    1382c(a)(3)(B).

8        The Commissioner has established a five-step sequential evaluation process

9    for determining whether a claimant is disabled within the meaning of the Social

10   Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

11   *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

12       Step one inquires whether the claimant is presently engaged in "substantial

13   gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

14   activity is defined as significant physical or mental activities done or usually done

15   for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

16   substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

17   404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

18       Step two asks whether the claimant has a severe impairment, or combination

19   of impairments, that significantly limits the claimant's physical or mental ability to

20   do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1  404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

2  burden, the Commissioner must establish that (1) the claimant is capable of

3  performing other work; and (2) such work exists in "significant numbers in the

4  national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

5  676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

7       A district court's review of a final decision of the Commissioner is governed

8  by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

9  Commissioner's decision will be disturbed "only if it is not supported by

10  substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

11  1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

12  a mere scintilla but less than a preponderance; it is such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

14  *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

15  1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

16  whether the Commissioner's findings are supported by substantial evidence, "a

17  reviewing court must consider the entire record as a whole and may not affirm

18  simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

19  *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

20  F.2d 498, 501 (9th Cir. 1989)).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.   Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Plaintiff was 39 years old at the alleged date of onset. AR 526. Plaintiff did not complete high school, but he did obtain his GED and an associate's degree as an information technology support specialist. AR 555. The ALJ listed his past relevant work as an electronics mechanic. AR 526. He has also worked as a clerk/receptionist, supply driver, mobile unit assistant, warehouse

worker, and a dishwasher, but the ALJ did not include these occupations in the opinion. AR 234.

Plaintiff has been assessed with mental health problems on multiple occasions. He has been diagnosed with major depression (AR 721), avoidant personality disorder (AR 700, 721, 726), and bipolar disorder (AR 726). Plaintiff also has a history of gastrointestinal issues, including pain and gallstones. AR 195, 491.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from March 1, 2005, Plaintiff's alleged date of onset.  AR 518.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2005. AR 518 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*).

**At step two**, the ALJ found Plaintiff had the following severe impairments: personality disorder and affective disorder. AR 528 (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). ALJ Adams noted that there were disagreements among the providers with regard to the correct diagnostic label, so the ALJ's opinion addressed all limitations addressed, regardless of the label. AR 518.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 518-520.

At **step four**, relying on the vocational expert's testimony, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: (1) Claimant can understand, remember, and carry out simple instructions with unskilled (SVP 2) work; (2) he can make simple work-related decisions; (3) he can respond appropriately to supervisors, but should not be required to work closely with co-workers; (4) he can deal with occasional changes in work environment; and (4) he can only have occasional exposure to and interaction with the public. AR 520.

ALJ Adams determined that Plaintiff is unable to perform any past relevant work as an electronics mechanic. AR 526. The ALJ based this opinion on the testimony of the vocational expert. *Id.*

At **step five**, the ALJ also found that after considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. AR 527. These include an industrial cleaner, a laundry sorter, and a hand packager. *Id.*

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9**

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 19 at 9. More specifically, Plaintiff alleges that the ALJ erred by: (1) making an improper determination of Plaintiff's credibility and (2) improperly rejecting the opinion of treating physician Dr. Hartman. *Id.*

## VII.   Discussion

### A. The ALJ Properly Assessed Plaintiff's Credibility

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged.  *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so."  *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

1    other testimony by the claimant that appears less than candid; (2) unexplained or

2    inadequately explained failure to seek treatment or to follow a prescribed course of

3    treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

4    1284 (9th Cir.1996). When evidence reasonably supports either confirming or

5    reversing the ALJ's decision, we may not substitute our judgment for that of the

6    ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999).

7        ALJ Adams determined that Plaintiff's "medically determinable

8    impairments could reasonably be expected to cause some of the alleged

9    symptoms." AR 521. However, the ALJ also found that Claimant's statements

10   regarding intensity, persistence, and limiting effects are not entirely credible. *Id.*

11   The ALJ cited multiple specific reasons for the decision that Plaintiff's statements

12   regarding his symptoms were not fully credible. The record supports the ALJ's

13   determination regarding credibility, and the Court does not find that the ALJ erred

14   in determining Plaintiff's subjective complaints and alleged limitations were not

15   fully persuasive.

16   **1.  Inconsistency Between Plaintiff's Statements and the Record**

17       First, ALJ Adams noted that when Plaintiff sought treatment for non-mental

18   illness related medical concerns, he often did not mention his mental health issues,

19   which is inconsistent with severely limiting symptoms. AR 522. The ALJ pointed

20   to the record's treatment notes of normal psychiatric observations. AR. 522.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1    During a 2007 hospital visit for severe chest pain, Claimant was described as

2    having "normal affect and behavior." AR 201. However, during the same

3    admission, the notes state that Claimant's behavior is "inappropriate and appears

4    anxious." AR 208. The ALJ noted this inconsistency and explained it as the result

5    of having been up all night. AR 522. Additionally, the ALJ pointed to an April

6    2008 medical visit for a follow-up related to his gastrointestinal issues, in which

7    the chart shows psychiatric problems as "negative." AR 492. There does appear to

8    be inconsistency in the record that may not substantially support the ALJ's

9    decision on this factor alone, but any error the ALJ made in this regard is harmless

10   in light of the remaining evidence the ALJ provided.

11           Significant to the ALJ was the results of objective medical testing that

12   conflicts with the Claimant's subjective assessment of his limitations. The ALJ's

13   opinion noted that Plaintiff "scores well on mental status examinations, and has

14   demonstrated little difficulty with attention and concentration." AR 522. The

15   record indicates that he underwent testing supervised by Dr. Jay Toews, EdD, in

16   2007, and the results indicated that he has "excellent ability" with regard to

17   attention, concentration, and processing of information. AR 241. Further, his visual

18   memory scores were in the average range, but his auditory memory test scores

19   were much higher. *Id.* These were the findings, despite Dr. Toews' notation that

20   Claimant appeared "not highly motivated during testing." *Id.* These objective

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

medical tests contradict Plaintiff's assertions that he struggles with memory and concentration problems. AR 168, 171.

The record also indicates that some examining physicians believed Plaintiff may have exaggerated his symptoms. Dr. Toews' 2007 evaluation found Plaintiff to be "vague, cynical, argumentative, and manipulative." AR 242. Dr. Toews further stated that he suspected "disability seeking motivation." *Id.*

In 2012, another examining physician, Dr. Aaron Burdge, PhD, expressed similar concerns to Dr. Toews. AR 698-700. Dr. Burdge found Plaintiff's behavior inconsistent with severe mental illness, and he also described Plaintiff as vague. AR. 699. In his assessment, Dr. Burdge stated that Plaintiff presented "with certain patterns or combinations of features that are unusual or atypical in clinical populations but relatively common among individuals feigning mental disorder." *Id.*

Plaintiff exhibited determined, albeit strange, behavior when seeking a diagnosis from Dr. Burdge. For example, forty-five minutes following their examination, Plaintiff called Dr. Burdge at his unlisted home phone number and stated "he needed to be found mentally ill/disabled." *Id.* He repeated this desire more than once to Dr. Burdge. *Id.* Also during this phone call, Plaintiff attempted to engage Dr. Burdge on the subject of his dissertation and religion, which Dr. Burdge refused to discuss. *Id.* While this behavior is troubling, it also demonstrates

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13**

Plaintiff's strong desire to obtain a positive diagnosis, as well as the ability to concentrate on and comprehend complex subjects such as a doctorate dissertation. This is contrary to Plaintiff's assertion that he has significant limitations in attention and concentration.

**2. Plaintiff's Daily Activities**

Also important to ALJ Adams in determining Plaintiff's credibility was the level of independence Plaintiff demonstrated in his daily activities. AR 521-522. These activities include: driving himself and family members, household chores and repairs, reading, video games, carpentry, playing musical instruments, karate, and billiards. AR 166-170. The ALJ interpreted these activities to be inconsistent with allegations of severely limiting mental health symptoms. AR 521-522. Further, the record indicates in multiple locations that Plaintiff is an avid reader, AR 170, 699, an activity that demonstrates concentration, persistence, and pace.

The ALJ stated that these activities are inconsistent with severely limiting symptoms. AR 522. In particular, they are inconsistent with Plaintiff's allegation that he can spend up to twelve hours in a day with his eyes closed, ruminating on his problems. AR 522, 562. While Plaintiff is correct that in the Ninth Circuit, one does not need to be "utterly incapacitated" to be eligible for benefits, *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), the record that does not corroborate Plaintiff's assessment of severe limitations.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

**3. Plaintiff's Failure to Treat**

Finally, the ALJ Adams opined that Plaintiff's failure to follow through with treatment undermined his credibility. AR 523. In his Function Report to the Social Security Administration in December 2007, Plaintiff lamented that he needs "psychiatric help and therapy." AR 173. He described his self-imposed isolation and behavioral problems that "run too deep after being ill for so long." *Id.* However, the record demonstrates that Plaintiff has repeatedly refused to take medication to manage his symptoms.

At least on one occasion, Plaintiff did seek medication to manage his symptoms. In September 2007, he was prescribed fluoxetine, an selective serotonin reuptake inhibitor ("SSRI"), AR 251, but the record does not indicate that he took this at all, or at least regularly. The ALJ noted in his decision that "less than a year later the claimant indicated he worried about the side effects of medication and did not describe ever having tried them." AR 523.

In May 2008, his treating physician Dr. Debra Gould, MD, discussed medication options with Plaintiff, but the record does not indicate she issued a prescription at that time. AR 497. At this visit, Dr. Gould also discussed thyroid testing (TSH) to attempt to better diagnose his depression, but Plaintiff refused the testing. *Id.* This is inconsistent with the statements made in the Function Report in 2007 that the Claimant needed psychiatric help.

A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). When refusing prescribed treatment, the reasons presented for not following the treatment must be related to the mental impairment and not a matter of personal preference. *Molina*, 674 F.3d at 1114. Plaintiff testified that he will not take psychiatric drugs because of side effects and a concern for "industrial toxins." AR 569. He stated that he doesn't trust drug companies and "would rather just find some other way to deal with my problems."[1] *Id.* These reasons demonstrate a personal preference, rather than attributable to mental illness. Thus, the Court will not disturb the ALJ's finding on credibility based on lack of treatment.

## B. The ALJ Properly Rejected the Opinions of Plaintiff's Treating Physician.

### 1. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those

---

[1] Even these statements are inconsistent with the record. Despite his assertions about medications and the drug industry, the record does indicate that Plaintiff was comfortable taking famotidine to manage his acid reflux. AR 251.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 803-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2.  The ALJ provided specific and legitimate reasons for rejecting Plaintiff's treating physician's opinion based on substantial evidence in the record.**

Plaintiff alleges that the ALJ erred by giving little to no weight to the opinion of treating psychiatrist Dr. Hartman. ECF No. 19 at 26. In the decision,

1   ALJ Adams stated that little weight was given to the July 2008 and January 2009

2   Department of Social and Health Services ("DSHS") evaluations performed by Dr.

3   Hartman, AR 525, and a Mental Residual Functional Capacity ("RFC")

4   Assessment form filled out by Dr. Hartman on October 27, 2008. AR 292-294.

5        The ALJ provided three reasons for this decision: (1) Dr. Hartman did not

6   have sufficient time treating the client, resulting in an insufficient longitudinal

7   perspective; (2) Dr. Hartman did not perform any objective testing and relied

8   heavily on subjective statements by the claimant; and (3) there was inconsistency

9   between Dr. Hartman's findings and the rest of the medical record, including the

10  opinions of Drs. Toews and Burdge and the Claimant's activities. AR 525.

11       The ALJ cited to specific and legitimate evidence in the medical record to

12  properly explain her decision to reject the opinion of Dr. Hartman. The Court will

13  not disturb the finding regarding the ALJ's decision.

14  **1. Longitundinal Perspective**

15       Length of treatment relationship and frequency of evaluation are factors for

16  an ALJ to consider when determining the weight to give a physician's opinion. 20

17  C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i). If a treating physicians has seen the

18  claimant a number of times "to have obtained a longitudinal picture" of the

19  claimant's impairment, the ALJ will give the source's opinion more weight than a

20  non-treating provider. *Id.*

1    In the opinion, the ALJ stated that Dr. Hartman lacked a "significant

2    longitudinal perspective of the claimant" because she saw the Claimant only five

3    times in seven months. AR 525. Plaintiff asserts that Dr. Hartman actually saw him

4    more frequently than the record indicates. ECF No. 19 at 28.  However, the record

5    only contains brief treatment notes for five visits between April 2008 and January

6    2009. AR 301-321. In the course of those five visits, there are lengthy gaps in

7    between several of the visits. AR 301-306. There are no visits documented

8    between April 16 and July 2, 2008, a gap of nearly three months. AR 305-306.

9    Again, there are no visits between July 16 and October 27, 2008, a gap of over

10   three months. AR 303-304.

11       Even Dr. Hartman seems to recognize that Plaintiff does not regularly seek

12   treatment. Dr. Hartman stated in her July 2008 assessment for DSHS that the

13   Claimant "comes to treatment regularly," AR 305, but her later assessment,

14   performed in January 2009, states only that the Claimant "comes to treatment." AR

15   299. Her recommendations change to reflect this as well – in July 2008 the

16   recommendation is individual therapy every other week, AR 290, but in January

17   2009 the recommendation is once per month. AR 299.  Yet, even despite this

18   change, the record demonstrates Plaintiff did not adhere to either recommendation.

19       The RFC Assessment form, which was also given little weight by the ALJ,

20   was filled out by Dr. Hartman on October 27, 2008, AR 292-294. This October

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 19

2008 visit came more than three months after the most recent visit to Dr. Hartman in the record. AR 303-304. The ALJ incorrectly noted in his opinion that Dr. Hartman had only seen the Claimant five times in total, which did not provide a longitudinal perspective. AR 526. However, the record shows that Dr. Hartman had only seen the Claimant three times before the visit during which she completed this form. AR 303-306. This would provide an even shorter longitudinal period.

In conclusion, Dr. Hartman recommended a more frequent visit schedule than the Claimant adhered to. With the long gaps in treatment and the relatively few visits prior to making her conclusions, the Court accepts the ALJ's opinion that Dr. Hartman did not have the appropriate longitudinal perspective as a reason to give little weight to her opinion.

## 2. Lack of Objective Testing, Reliance on Subjective Complaints, and Inconsistency with the Medical Record

The ALJ also stated that Dr. Hartman's opinions were given little weight because she failed to perform any objective testing, her findings were inconsistent with the objective testing performed by other physicians, her assessment does not reference any objective observations, and she relied heavily on Plaintiff's subjective complaints and assessments. AR 525.

The RFC Assessment form was a series of checked boxes regarding Plaintiff's limitation. AR 292-294. The very limited explanation for any of the

1  checked boxes are "Ongoing irritability and social avoidance (sic) Depression

2  causes loss of concentration and good decision making". AR 294. As discussed

3  previously, this is highly contradictory to the testing performed by Dr. Toews,

4  which demonstrated "excellent ability" in concentration. AR 241; *see also supra*

5  pp. 12-13.

6      A lack of objective testing or findings alone is not a valid reason to reject a

7  treating physician's opinion; however, a treating physician's opinion may be

8  rejected when it lacks supporting objective evidence, is contradicted by the record,

9  and is based on subjective reports of the claimant. *Batson v. Comm'r of Soc. Sec.*

10 *Admin.,* 359 F.3d 1190, 1195 (9th Cir.2004); *see also Butler v. Astrue,* 773 F.

11 Supp. 2d 975, 980 (D. Or. 2011) (specifically discuss opinion in the form of a

12 faulty checklist).

13     The ALJ describes Dr. Hartman's RFC Assessment form as "too vague and

14 general" and provides inconsistent opinions without sufficient explanation. AR

15 525-526. Dr. Hartman's explanations for her findings are limited to two brief

16 sentences. AR 294. Further, these findings are contrary to objective clinical

17 findings and opinions from other physicians, Drs. Toews and Burdge. AR. 238-

18 248, 698-703. Despite Plaintiff's assertion that Dr. Hartman's evaluations include

19 objective evidence gained by her training and observation of her patient, ECR No.

20 19 at 30, her treatment notes are too limited to support this contention. AR 301-

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY**
**JUDGMENT** ~ 21

306. Thus, like the RFC Assessment form, it is unclear from the limited treatment notes how Dr. Hartman developed the opinion in her opinions provided to DSHS in July 2008 and January 2009. AR 287-290, 296-299.

Dr. Hartman's DSHS assessments also are not supported by the record. The forms state that Plaintiff has marked limitations on his ability to learn new tasks and exercise judgment, and his depression causes loss of concentration and prevents good decision making. AR. 289, 298. This directly contradicts Dr. Toews' test results that show the Claimant "has excellent ability to acquire new verbal information and that ability to access stored information by recall is in the Superior range," and has no indication of memory deficits or impairments. AR 242; *see also supra* pp. 12-13.

To the extent that there is more than one rational interpretation of the record, the ALJ's findings must be upheld when, as here, they are supported by reasonably drawn inferences. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record"). The ALJ cited to specific and legitimate evidence in the medical record to properly explain her decision to reject the opinion of Dr. Hartman.

//

//

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22**

# VIII.  Conclusion

Based on the foregoing, the Court finds the Commissioner's decision is free of legal error and supported by substantial evidence. Therefore, Defendant's Motion for Summary Judgment is granted.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 19**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 23,** is **GRANTED.**

3. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 7th day of December, 2015.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge